**UNITED STATES of America,
Plaintiff,**

v.

**Edward J. AHRENS, Defendant.**

**No. F–72–C–41.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Jan. 28, 1975.
Supplemental Opinion April 11, 1975.

Francis P. Dicello, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

R. L. Wommack of Wommack, Lineberger & Davis, Fayetteville, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

This is a suit to collect an alleged income tax deficiency brought by the Government against the defendant, Edward J. Ahrens, as authorized by 26 U.S.C.A. (1954) § 6502, and by 28 U.S.C.A. §§ 1340 and 1444.

The suit was commenced October 10, 1972, seeking to recover $152,151.55, plus additional interest, for income taxes allegedly due for the taxable year 1967, which complaint was later amended to strike out the year 1967 and insert in lieu thereof the year 1961.

On October 31, 1972, defendant filed his answer in which he denied the various allegations of the complaint and prayed that the complaint as amended be dismissed.

No other pleadings were filed until February 7, 1974, when the plaintiff filed its first motion for summary judgment supported by a memorandum brief. When that was done, the proceeding was assigned to the writer. By correspondence and otherwise the court urged the parties to prepare the case for trial or other disposition. On February 19, 1974, the defendant filed his response to the motion of plaintiff for summary judgment. In his response the defendant contended and alleged that the motion for summary judgment should be dismissed for the reason that the issues of fact yet to be determined are as follows:

"(a) Whether the originating audit of the income taxpayer's return and notice procedures as provided in the Internal Revenue Code of 1954 were, in fact, performed in the time and manner required by law.

"(b) Whether notice of the deficiency of assessment was served upon the defendant or his duly authorized agent and attorney in fact in the time and manner required by law.

"(c) Whether the 'delinquent notice' as provided in Section 6213(c) of the Internal Revenue Code was in fact, filed and served upon the defendant or his duly authorized agent in the time and manner as required by law.

"(d) Whether the defendant, while serving in the Central Intelligence Agency of the United States Government in Viet Nam, during the auditing of the income tax return, was in fact given adequate notice and opportunity to defend himself either through duly authorized legal representation or personal appearance against assessment proceedings brought against him while he was in the service of his Country."

The motion of plaintiff was overruled on April 2, 1974.

Following the entry of the order overruling said motion, the parties proceeded with their discovery procedure and, after completion, the plaintiff requested that the case be set for a pretrial conference. The court entered an order on November 5, 1974, fixing November 20, 1974, as the date for such conference.

However, on November 19, 1974, one day prior to the pretrial hearing, the plaintiff filed its second motion for summary judgment together with brief in support thereof. At the hearing it developed that the defendant had had no opportunity to file a response to the second motion for summary judgment or to submit brief in opposition thereto.

The parties were in agreement that the discovery proceedings were complete on the questions then before the court, subject to the right of the defendant to file response to the motion of plaintiff. Therefore, the defendant asked and was granted time in which to file his response to the second motion above referred to and also to file motion for judgment on the pleadings, motion to strike, and motion for summary judgment, which response and motions re-

ferred to were filed by defendant on December 29, 1974, and supported by brief. On January 22, 1975, the plaintiff submitted its reply to the defendant's brief of December 29, 1974.

In the reply the plaintiff reiterates to a great extent its contentions made in its memorandum filed in support of its second motion for summary judgment on November 19, 1974. It further states: "There is no question in this case but that the defendant is trying to escape from the liability assessed against him on the sole grounds that there cannot be produced either by the defendant or the United States a copy of the deficiency notice sent to him and his attorney with respect to the year 1961." The Government also contends that the notice of deficiency was included in its communication of June 22, 1966.

On March 20, 1962, the defendant and his wife signed their joint tax return for 1961, and the return was apparently filed immediately showing a total tax for the year 1961 of $7,687.42.

It is the contention of the defendant that the IRS did not comply with the established procedures in making the alleged assessment of taxes against him and that he was not given an opportunity to contest the merits of the alleged assessment of the taxes in the Tax Court since he was not issued a timely notice of the alleged deficiency and assessment and that the complaint should be dismissed.

The plaintiff contends that the IRS properly followed the correct procedures and that its second motion for summary judgment should be granted and judgment entered for plaintiff in accordance with its complaint.

The court believes that the decisive questions may best be answered by first stating the law applicable to the issues, and then applying the law to the facts as established in the record.

Jurisdiction of the controversy is granted by 26 U.S.C.A. § 7402, Internal Revenue Code of 1954.

The taxing system of the United States is premised on self-assessment, and taxes in excess of those voluntarily returned by the taxpayer can be assessed by the IRS only under the procedure provided in the Code except in certain situations not here applicable. This procedure is designed to give the taxpayer the opportunity to appeal to the Tax Court the Service's determination that a deficiency exists. 9 Mertens, Law of Federal Income Taxation, § 49.126. If a deficiency in income tax is determined, then certain officials are authorized to send notice of such deficiency the taxpayer, 26 U.S.C.A. §§ 6212–6213. The notice of deficiency is sometimes referred to as a "ticket to the Tax Court."

Section 49.131, p. 242, of 9 Mertens, Law of Federal Income Taxation, states:

"Until such notice has been sent to the taxpayer and the appropriate waiting period provided in the Code has expired, and except in certain circumstances which are exceptions to the general rule, no assessment of an income tax deficiency can be made and no distraint or proceeding in court for its collection may be made, begun or prosecuted. The mailing of a proper notice of deficiency (1) suspends the statute of limitations on assessment, (2) permits the taxpayer, if he wishes, to appeal to the Tax Court for a redetermination of the deficiency within the applicable period commencing with the mailing of such notice, and if the taxpayer appeals (3) restricts the sending of further deficiency notices."

In Robinson v. Commissioner of Internal Revenue, 57 T.C. 735, the court at page 737 said:

"The statute of limitations is a defense in bar and not a plea to the jurisdiction of this Court. Badger Materials, Inc., 40 T.C. 1061 (1963). In establishing this defense, the petitioner 'must make a prima facie case, which ordinarily means proof of the filing of the statutory return and the

expiration of the statutory period; whereupon the respondent must go forward with countervailing proof.' E. J. Lorie, 21 B.T.A. 612, 614 (1930); see Knollwood Memorial Gardens, 46 T.C. 764, 792 (1966); Anne Gatto, 20 T.C. 830 (1953); C. A. Reis, 1 T.C. 9 (1942); M. A. Nicholson, et al., 22 B.T.A. 744, 746 (1931); Bonwit Teller & Co., 10 B.T.A. 1300 (1928). Thus, if the petitioners plead and prove that they have not received a notice of deficiency before the running of the period of limitations, it is clear that they have met their burden of proof and that the respondent must then show that the running of the period was in some way suspended. See James A. Rogers, 57 T.C. 711 (1972); T. W. Warner Co., 19 B.T.A. 872 (1930); Bernicedale Coal Co., 16 B.T.A. 696 (1929)."

See, also, Rogers v. Commissioner, 57 T. C. 711.

In United States v. Lehigh (W.D. Ark.1961) 201 F.Supp. 224, the court had before it for decision the identical questions sub judice. The court (Judge Henley) discussed all issues pertaining to the defense, and his conclusions were stated with remarkable clarity. At page 227 the court stated:

"The sole defense tendered by defendant is that he was not given proper notice of the assessment upon which the Government's claim is based, that the failure to give such notice was fatal to the assessment, and that it is now too late for the Government to make any other assessment against him with respect to his 1953 income tax liability.

"The Government contends that either one or both of the notices mailed to defendant constituted sufficient compliance with the statutory requirements of notice. It appears to be recognized by both sides that, unless there was compliance with the notice requirements of the statute, the Government is not entitled to prevail.

See in this connection Merten's Law of Federal Income Taxation, Rev. § 49.131FF and § 49.146, and authorities there cited.

"The statutory requirements of notice with which the Court is concerned may be found in sections 6212 and 6861 of the 1954 Internal Revenue Code and in sections 272 and 273 of the 1939 Code. As applicable to this case those sections provide in substance that when a jeopardy assessment is made notice thereof is to be mailed to the taxpayer within 60 days after the making of such assessment. Section 6212(a) authorizes the Secretary of the Treasury or his delegate to mail the notice to the taxpayer by means of registered or certified mail; and section 6212(b) provides, with an exception not here pertinent, that when the notice is mailed to the taxpayer's last known address, it is sufficient even though the taxpayer be dead or under legal disability. The notice serves the dual purpose of notifying the taxpayer of the Government's claim and of defining the period within which the taxpayer may apply to the Tax Court for relief. 26 U.S.C.A. § 6213(a).

"It is settled that where the notice is sent by registered or certified mail to the taxpayer's last known address it is not necessary that the notice actually be received by the taxpayer. Nor is it necessary that the notice be sent to what is actually the taxpayer's 'correct address.' It is sufficient if it is sent to his 'last known address.' But a letter which is simply improperly addressed has no legal efficacy as a notice. Merten's op. cit. § 49.134.

"In many instances the 'last known address' of the taxpayer is the address shown on the return so that a mailing of a deficiency notice to that address will be sufficient. However, if, after the return is filed, the Government learns that the taxpayer has moved and has acquired a new address, the

notice must be sent to that address. Maxfield v. Commissioner of Internal Revenue, 9 Cir., 153 F.2d 325; Commissioner of Internal Revenue v. Rosenheim, 3 Cir., 132 F.2d 677; Welch v. Schweitzer, 9 Cir., 106 F.2d 885; see also Annotation in 24 A.L.R.2d 800, 805ff.

"When a notice of deficiency is to be given, the Commissioner is required to exercise ordinary care to ascertain the correct address of a taxpayer and to mail the notice to that address. Arlington Corporation v. Commissioner of Internal Revenue, 5 Cir., 183 F.2d 448, and other cases there cited."

At page 228 the court stated:

"In many cases where the question of notice is involved the significance of that question lies in its limitation of a taxpayer's right to seek relief in the Tax Court. However, in the instant case the question of notice is of controlling importance because of the fact that if proper notice was not given, the assessment was invalid, and by virtue of section 6501(a) of the 1954 Code no new assessment could be made with respect to defendant's 1953 liability after a lapse of three years beyond the filing of the return in 1954 and after the lapse of such period no valid judicial proceeding could be instituted to collect the tax without assessment."

At page 233 the court stated:

"However, the Court has seen no case holding that a mere 'Statement of Income Tax Due,' such as was mailed to defendant, or any comparable document, has ever been considered to qualify as a statutory notice. That the statement mailed to defendant was not intended as a statutory notice is evidenced by the fact that in September a full and formal notice was mailed to defendant, albeit to the wrong address. And the Court has grave doubt that the requirement of the statute is satisfied by the mailing of such a statement as that which the defendant received, even if such statement were free from error."

The case was appealed by the United States and dismissed on its own motion, 305 F.2d 377 (8 Cir. 1962).

In United States v. Ball, (4 Cir. 1964) 326 F.2d 898, the court beginning at page 900 said:

"To place our holding in regard to the lower court's decision as to the sufficiency of notice in its proper perspective, we must consider two of the alternative means of collection of unpaid income taxes provided for by the Internal Revenue Code 1954. In the usual case, § 6212(a) of the Code, 26 U.S.C.A. § 6212(a), requires the Government, as a first step, to send a notice of deficiency to the taxpayer, by registered mail [now certified or registered mail]. Thereafter, the Government may make an assessment of unpaid tax (26 U.S.C.A. § 6201), provided that the assessment is made within the period of time after the notice of deficiency prescribed by 26 U.S.C.A. § 6213. Once the assessment has been made, § 6303(a) of the Code, 26 U.S.C.A. § 6303(a), requires notice and demand for payment of the tax as a condition precedent to the taking of additional steps to enforce its collection and payment.

"Thus, in the usual case the Code contemplates the giving of two notices by the Government, first, the notice required by § 6212(a) of a deficiency, and the notice required by § 6303(a) of assessment and demand for payment. The notice of deficiency is specified to be by registered mail (26 U.S.C.A. § 6212(a)), while no such restriction is applicable to the notice of assessment and demand for payment (26 U.S.C.A. § 6303(a))."

At page 902 the court said:

"Appellee's second contention is equally lacking in merit. Appellee sought and obtained summary judgment. It was incumbent on appellee

to show that there was no 'genuine issue as to any material fact' and that appellee was entitled 'to a judgment as a matter of law,' Fed.Rules of Civil Procedure, Rule 56. From what we have said, the validity of the lien was dependent upon the validity of the assessment which in turn depended upon the validity of the notice of deficiency. The complaint failed to allege the giving of notice of deficiency; the answer did not admit the fact; nor did the stipulation or affidavit establish it. Appellee thus failed in this regard to meet its burden, unless it be held that appellants have waived this possible defense."

See, also, Brafman v. United States, (5 Cir. 1971) 384 F.2d 863.

The record is replete with inadmissible, irrelevant and totally unsupported conclusions of various employees of plaintiff in its effort to establish that IRS timely followed the statutory procedures and that it is entitled to summary jugment of liability against the defendant. The court is convinced from consideration of all the competent, relevant and admissible evidence and the applicable law heretofore set forth that the complaint should be dismissed.

As heretofore stated, the defendant timely filed the statutory joint income tax return for the CY 1961. He was at that time and had been for several months employed in the operation of a general insurance business and had many agents soliciting business and reporting the various policies as they were obtained by said employees. Soon after the return was filed the IRS began an investigation apparently for the purpose of reaching a compromise with defendant, but no agreement was reached. At that time he and his wife were living at 4900 Forest Ridge Lane, Columbia, S. C., as indicated on the return. In the month of October 1962 he and his wife separated and he left the home pending the determination of a divorce proceeding instituted by his wife. In the month of September 1964 a final decree

of divorce was granted, and she was awarded the house mentioned at the above address. The record does not show the date he answered a call of the Government for service in the U. S. Army, but in 1965 he lived at Holden Beach, N. C. and was stationed at Fort Bragg from June 1965 to September 1965, when he was transferred to Fort Gordon and remained there until February 11, 1966. He was transferred to a training base for CIA at Washington, D. C. On May 8, 1966, he was assigned for service in Viet Nam and was stationed there on June 22, 1966, when the alleged notice of deficiency was mailed. While in Viet Nam he received two furloughs, one in October 1966 and again in March 1967. On July 25, 1967, he was evacuated medically to the United States and stayed at Holden Beach until November 1967. From November 1967 until March 1968 he lived in Washington, D. C., and worked for the CIA. He was assigned to Manila and Viet Nam on March 14, 1968, and did not return to the United States until November 15, 1969.

On November 9, 1965, in an effort to aid in the investigation of his business, he executed a power of attorney to E. L. McGowan, an attorney of Columbia, S. C., to represent him in respect to internal revenue matters. He gave his attorney all of his IRS records which were delivered by his attorney to the IRS and so far as the record shows were retained by the IRS.

He testified that at all times the officials of the IRS were advised of his address and the various changes. This was not denied by anyone.

The plaintiff now claims that it caused to be mailed a statutory notice of deficiency to E. L. McGowan, the attorney, on June 22, 1966, and that the 90-day period in which the defendant could have filed a petition with the Tax Court expired on September 20, 1966.

The only evidence submitted by plaintiff is evidenced by Exhibit 3 of plaintiff to the discovery deposition of defendant

taken on October 11, 1974. Exhibit 3 is Post Office Department Form 3877–A, "Firm Mailing Book for Use in Accept- ance of Insured, C. O. D. and Certified Mail," to which was attached the follow- ing:

Appellate Division, Southeast Region
Internal Revenue Service
6542 S Courthouse, 801 Broadway
Nashville, Tennessee 37203

Statutory notices of deficiency, for the year(s) indicated, have been sent to the following taxpayers:

| Number of Article | Name of Addressee, Street, and Post-Office Address | Postage | Fee | Due Sender if C.O.D. | Endorsement | R.R. Fee | S.D. Fee | S.H. Fee | Restricted Delivery Fee — Remarks |
|---|---|---|---|---|---|---|---|---|---|
| 1 601,215 | "Mr. Edward J. Ahrens and Mrs. Lillian M. Ahrens" Husband and Wife 4900 Forest Ridge Lane Columbia, South Carolina 29206 Years 1959, 1960, 1961, 1962 | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 601,216 | Mr. Edward J. Ahrens and Mrs. Lillian M. Ahrens, Husband and Wife c/o Mr. E. L. McMahon, Attorney 1500 Washington Street Columbia, South Carolina 29204 Years 1959, 1960, 1961, 1962 | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | | | | | | | | | |
| 12 | | | | | | | | | |
| 13 | | | | | | | | | |
| 14 | | | | | | | | | |
| 15 | | | | | | | | | |
| 16 | | | | | | | | | |
| 17 | | | | | | | | | |
| 18 | | | | | | | | | |
| 19 | | | | | | | | | |
| 20 | | | | | | | | | |

Indicate type of mail: ☐ INSURED ☐ C.O.D. ☒ CERTIFIED

Affix stamp here if issued as certificate of mailing or for additional copies of this bill.

POSTMARK AND DATE OF RECEIPT

NASHVILLE TENN. JUN 22 1966

POSTMASTER, PER (Name of receiving employee)

TOTAL NUMBER OF PIECES RECEIVED AT POST OFFICE

TOTAL NUMBER OF PIECES LISTED BY SENDER

6-22-66

[1] Mark "F" if "Fragile," "P" if "Perishable," "E" if "Eggs," "BH" if "Eggs for Hatching," "B" if "Butter," "FL" if "Fragile-Liquid," and "FLU" if "Fragile-Liquid—This Side Up."
[2] Special-handling charges apply only to fourth-class parcels. Special-delivery service also includes special-handling service.

U. S. GOVERNMENT PRINTING OFFICE

No statement indicating by whom notice was sent or when sent and no notice of deficiency for 1961 was referred to in Exhibit 3. There was no evidence that any notice was included in the letter of June 22, 1966, to Mr. McGowan. It will be noted that the document above set forth refers to the calendar years 1959, 1960, 1961 and 1962. If an assessment was made and notice of deficiency prepared, copies would be available and could have been introduced into evidence.

Mr. McGowan did received the communication of June 22, 1966, and on December 29, 1966, wrote the Acting Chief of the Appellate Branch Office of the IRS, in which he stated:

"Mr. J. Howard McLean, Acting Chief
Appellate Branch Office
Internal Revenue Service
654 U. S. Court House
801 Broadway
Nashville, Tennessee

Re: AP:Nash:RHR:LMD
Edward J. Ahrens and
Lillian M. Ahrens

Dear Mr. McLean:

"In regards to your letter of the 22d day of June, 1966, the taxpayer is serving in Viet Nam and has been there during the entire time since the 22d day of June, 1966. Until the taxpayer returns to this country, I will not be able to discuss with him his rights and therefore request that this case be held in abeyance until such time as he returns.

"Immediately upon his return I shall contact your office.

Respectfully requested,
/c/ E. L. McGowan
E. L. McGowan"

---

An assessment is merely a bookkeeping account on the part of the Treasury. The tax liability for each taxpayer is recorded and becomes in effect the District Director's record of accounts payable. The assessment is made when the appropriate official in the Director's Office or Service Center signs a summary record sheet which contains the taxpayer's name, address, amount of tax, type of tax and taxable period. The date of assessment is very important because unless it falls within the assessment period, the assessment is void, and the 6-year period for collection of taxes begins. The defendant would not normally be aware of the date of the assessment until he receives a notice and demand.

26 U.S.C.A. § 6213 provides:

"(a) Time for filing petition and restriction on assessment.—Within 90 days or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall

be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

The attorney for the plaintiff frankly, admitted at pre-trial conference that he nor plaintiff could find a copy of the notice required to be sent by the applicable statute.

■ No one testified of his own personal knowledge that a deficiency was found and declared; that an assessment was made; and that notice of such deficiency was sent to the defendant by certified or registered mail; but if it be assumed that a notice was properly mailed, the question remains whether such notice was sufficient to constitute a valid notice under the applicable statutes. That question could have been answered if a duly attested copy of the alleged deficiency, the assessment of the claimed deficiency, and notice of such deficiency had been introduced, but no such attested copies were introduced. The Certificate of Assessments and Payments is not sufficient. The document attached to Exhibit 3, heretofore set forth, purports to deal with the years 1959, 1960, 1961 and 1962. The only year involved was 1961.

This record deals with events that occurred not later than June 22, 1966. The suit was not filed until October 10, 1972, a delay of more than six years for recovery of the taxes for 1961. The answer was filed October 31, 1972. Nothing further was done until February 9, 1974, more than seven years and seven months later, when this court by correspondence and long distance urged the parties to prepare the case for trial or other disposition. The case then began to move and the last brief was submitted January 22, 1975.

■ Affidavits have been filed by the attorneys in support of the contentions of the parties but none of the affidavits are based on personal knowledge and do not set forth facts admissible in evidence or supplemental to answers to interrogatories as required by Rule 56(f), Fed.R.Civ.P. When the record is considered as a whole, the court is of the opinion that the plaintiff has exhausted all available sources of relevant and admissible facts in its effort to establish that a valid notice of a deficiency was sent to defendant and nothing can be established by further proceedings; and that the defendant has met his burden of proof on the essential point involved herein. The government has effectively deprived the defendant of his right to file a petition with the Tax Court for a redetermination of the deficiency, and the complaint should be dismissed.

Judgment in accordance with the above is being entered today.

## SUPPLEMENTAL OPINION

On February 6, 1975, the plaintiff filed the motion, pursuant to Rules 52(b) and 59(a), Fed.R.Civ.P., to alter or amend the court's judgment entered January 28, 1975, and to either enter judgment for plaintiff or, in the alternative, to set aside the judgment and set the matter for trial for the reason that the court "viewed this matter as one having substantial factual issues and accordingly this matter should not be determined in a summary proceeding but only after all factual questions had been tried in a trial before the court." Plaintiff further alleges "that the court erred as a matter of law in holding that the defendant, Edward J. Ahrens, was entitled to judgment in his favor in this matter."

On February 24, 1975, the defendant filed his response to the motion in which he alleged that the judgment entered on January 28, 1975, was entered in accordance with the opinion of the court filed the same date, and that the court did not err as a matter of law in holding that defendant was entitled to a judgment dismissing the complaint of plaintiff.

In its motion plaintiff submitted a memorandum in support thereof and requested oral argument. The defendant supported his response by memorandum.[1]

In considering the issues now before the court, it is necessary to keep in mind dates of certain actions of the parties that occurred prior to the date of the judgment of January 28, 1975.

February 7, 1974, plaintiff filed its first motion for summary judgment.

February 19, 1974, defendant filed response to the first motion.

April 2, 1974, the motion was overruled and parties were ordered to proceed with their discovery procedures.

November 5, 1974, the court by order set the case for pretrial on November 20, 1974.

November 19, 1974, the day prior to the date fixed for pretrial, plaintiff filed its second motion for summary judgment and supporting brief.

December 5, 1974, the court granted defendant time to file response to the second motion and such motions as he deemed necessary.

On December 19, 1974, defendant filed his various motions referred to in the original opinion and supported them by brief.

On January 20, 1975, plaintiff served its brief in opposition to the motions and brief of defendant.

On February 6, 1975, plaintiff filed its brief in support of its present motion to alter or amend the judgment of January 28, 1975.

On February 24, 1975, defendant filed his brief in opposition to the motion of plaintiff to alter or amend the judgment.

It is difficult to conceive of a case where more confusion existed on the part of the IRS from the date defendant and his then wife filed their joint income tax return for the calendar year 1961 on March 20, 1962.

The plaintiff now contends on its brief of February 6, 1975:

(1) That the court in its original opinion recognized the existence of crucial factual issues and judgment should only be entered after trial on the merits.

(2) That the court found:

"No statement indicating by whom notice was sent or when sent and no notice of deficiency for 1961 was referred to in Exhibit 3. There was no evidence that any notice was included in the letter of June 22, 1966, to Mr. McGowan. It will be noted that the document above set forth refers to the calendar years 1959, 1960, 1961 and

---

1. Prior to the filing of plaintiff's motion, the court had mailed to West Publishing Company a copy of its opinion for publication, but upon receipt of motion the court did not withdraw the opinion but requested West to delay publication until the court could consider plaintiff's motion.

The court has now considered the motions, the memoranda, and oral argument of counsel, the additional exhibits designated 1, 2, and 3, offered in evidence during oral argument but objected to by defendant, and in addition has reviewed and reconsidered the briefs and record that were before the court upon which the opinion of January 28, 1975, was based. It has prepared and filed this supplemental opinion overruling and denying the present motion of plaintiff and confirming the judgment for the reasons, stated herein, and in the opinion of January 28, 1975.

The court has endeavored to refrain from repeating the statements and authorities set forth in the opinion of January 28, 1975, but in view of the contentions now made by plaintiff in support of its present motion, it is necessary to refer to and repeat portions of said opinion.

1962. If an assessment was made and notice of deficiency prepared, copies would be available and would have been introduced in evidence."

"When the record is considered as a whole, the court is of the opinion that the plaintiff has exhausted all available sources of relevant and admissible facts in its effort to establish that a valid notice of deficiency was sent to defendant and nothing could be established by further proceedings; and that the defendant has met his burden of proof on the essential point involved herein. The Government has effectively deprived the defendant of his right to file a petition with the Tax Court for a redetermination of the deficiency and the complaint should be dismissed."

(3) That the court erred as a matter of law in granting judgment in favor of the defendant.

The plaintiff, in making its contentions, completely overlooks and disregards the applicable law and its absolute duty to substantiate its contentions by legal and admissible evidence. The Exhibit 3 referred to by plaintiff in the statement of its contentions is Post Office Department Form No. 3877–A, "Firm Mailing Book for Use in Acceptance of Insured, COD, and Certified Mail." The document is set forth in full in the opinion of January 28, 1975.

In August v. Commissioner, (1970) 54 T.C. 1535, the court beginning at page 1537 outlined the standard procedure that is followed in the mailing of statutory notices of deficiency, as follows:

"The Internal Revenue Service endeavors to make sure that a deficiency notice is issued in proper form to the correct taxpayer and that it is mailed within the statutory period. Since the Commissioner may be required to prove the mailing of the deficiency notice, the exact date of mailing, together with the postal certification or registry number, are carefully preserved in its records for that purpose. The regular administrative procedures were followed in the instant case.

"We think respondent has submitted persuasive evidence that the notice of deficiency was 'mailed' to the petitioner on June 18, 1969. John Djinivis, chief mail clerk for the Boston Office of the Internal Revenue Service, testified that a standard procedure is followed in mailing statutory notices of deficiency. The notices are first brought to the mailroom by a clerk from the Review Section of the Audit Division. The names on the notices are then checked by the mail clerk against the names listed on the Post Office Department form 3877, Application for Registration or Certification, which list is brought from the Review Section, along with the letters, by the review clerk. The review clerk then signs the reverse side of the form 3877, certifying that the notices listed on the front side of the form 3877 were in fact delivered to the mail clerk on the particular day indicated by the review clerk. The mail clerk thereupon inserts the notice of deficiency in the envelope, and seals the envelope. The mail clerk next assigns numbers, one to each notice of deficiency, in a consecutive manner, so that each notice bears a different number from other numbered letters mailed on the same or other days. The assigned number is written by the mail clerk upon the cover in which the notice of deficiency has been enclosed, and is recorded on the form 3877 beside the name of the taxpayer to whom the particular notice is addressed. The mail clerk then records the assigned numbers in his daily logbook, noting the particular numbers assigned, the date on which those numbers were assigned, and the type of letter (i. e., 90–day statutory notice, registered mail) to which the particular numbers were assigned. The mail clerk then personally takes the num-

bered letters and the form 3877 to the U.S. Post Office, and delivers the letters into the custody of a Post Office clerk. The Post Office clerk checks the number of envelopes delivered into his custody by the Internal Revenue Service mail clerk against the number of letters listed on the face of the form 3877, and checks the addresses on the envelopes with the names listed on the form 3877. The Post Office clerk then verifies that the letters accepted by him from the mail clerk match the letters described on the face of the form 3877, by stamping the mailing date and the Post Office station at which the letters were mailed, on the form 3877. This completes the procedure which is regularly pursued to ensure that statutory notices of deficiency are mailed and that the date of mailing is accurately recorded.

"Djinivis testified that his daily logbook, in which he is required to make note of all 90-day certified mail which passes through the mailroom, indicates that forty 90-day statutory notices of deficiency were assigned the consecutive numbers 543613 through 543652 on June 18, 1969. These 40 numbers include the number 543616, which is the number assigned to the envelope bearing the notice of deficiency mailed to petitioner. As Djinivis testified, the regular mailroom procedure is to place these numbered letters in the custody of the Post Office immediately after the numbers are recorded in the logbook. Djinivis' logbook is corroborated by the Post Office Department form 3877 which lists the statutory notice of deficiency to petitioner and bears a June 18, 1969, postmark.

"The postmark stamped on the face of the form 3877 certifies that the letters listed on the face of that form were, in fact, placed in the custody of the Post Office on June 18, 1969. Since this postmark date is stamped on the form 3877 only after the num-

ber of letters and the addresses of the letters have been found by the Post Office clerk to match the number of letters and the addresses of the letters listed on the form 3877, it is clear that the statutory notice of deficiency sent to the petitioner, bearing the Internal Revenue Service mailroom number 543616, was placed in the custody of the Post Office Department on June 18, 1969."

■ The plaintiff contends that this so-called Exhibit 3 is positive proof that the notice of deficiency was in the envelope mailed to the attorney for the defendant on June 22, 1966, and relies most heavily on the case of Cataldo v. Commissioner, (1973) 60 T.C. 522. The case in nowise supports the contention. In Cataldo the Commissioner introduced the testimony of witnesses who handled the details of the transaction and who testified that they followed the standard procedure. The court held that the law requires the Commissioner "to establish his procedure for the mailing of such notices and to introduce evidence showing that such procedure was followed in the case before it." The court held the Commissioner had, by the testimony of the witnesses, met his burden of proof. Here the plaintiff did not call or produce a single witness that handled any of the transaction or completed or assisted in the various transactions.

An examination of Exhibit 3 of plaintiff, Post Office Department Form 3877–A, which was set forth in full in the original opinion, discloses that on June 22, 1966, one article, No. 601215, was mailed to Mr. Edward J. Ahrens and Lillian M. Ahrens, husband and wife, 4900 Forest Ridge Lane, Columbia, South Carolina 29206, and article No. 601216 was mailed to Mr. Edward J. Ahrens and Mrs. Lillian M. Ahrens, Husband and Wife, c/o Mr. E. L. McGowan, Attorney, 1500 Washington Street, Columbia, South Carolina 29201, for the years 1959, 1960, 1961 and 1962. The document further states the statuto-

ry notices of deficiency for the years indicated had been sent to the taxpayers by certified mail, but does not state when or by whom the notices of deficiency were prepared or signed or the provisions of such notices.

The envelope containing the document above referred to was in fact received by the addresssed, E. L. McGowan, and

2. Beginning on page 6 of the deposition the following questions were propounded and answers given:

Q. Did Mr. Ahrens or you receive any records or materials back from the IRS concerning Mr. Ahrens' Federal tax liability for 1961?

A. I never had possession of any of Mr. Ahrens' records either prior to—if he did turn them over to the IRS—or getting them back from the IRS. I never had possession of any of them.

Q. What materials are you in possession of now?

A. I'm not in possession of any of Mr. Ahrens' materials at this time. May I explain this?

Q. Certainly.

A. Mr. Ahrens maintained or kept the records, his financial records, invoices, cancelled checks, bank statements, and books. I never had possession of those. The only instruments I had possession of of Mr. Ahrens at any time that I can recall was notices of a deficiency in tax, notice of assessment, the audit reports from the Internal Revenue Service, the proposed—well, I'll say proposed assessments, probably a copy of a deed on a house in North Carolina, and letters, correspondence, copies of letters, that type of thing in the files. Now, whenever I closed down my legal practice in 1970 a fellow that was working for me, a fellow attorney that was working for me at that time was going into practice for himself. He took the files, all of the files in my possession, except a couple of current old clients of mine files, which I retained, and moved out of my office, moved them out of our office and moved them into his office on Bull Street, and in December of 1971 he had a fire and what files I had were destroyed in the fire. At least Ahrens' file was destroyed in the fire. There were other files that weren't.

Q. You didn't return any of Ahrens' files?

plaintiff, relying upon the deposition of E. L. McGowan, strenuously contends that the notice of deficiency was contained in the envelope. The deposition of Mr. McGowan taken on October 30, 1974, discloses that he was the attorney for defendant in the controversy with the plaintiff. The material portion of his testimony is set forth in footnote 2.

A. Some of the items in the file were returned to Mr. Ahrens on different occasions. They were also—I believe Mr. McKay, an attorney here in town, Jay McKay, also picked up some of Mr. Ahrens' stuff from my office while I was still practicing law.

Q. I see, but you didn't retain any files at the time you turned over the bulk of your files to this new attorney?

A. No, I didn't retain any of Mr. Ahrens' files. I hadn't represented Mr. Ahrens in three or four years; except for an occasional telephone call or occasional correspondence I had not heard from him.

Q. What was this attorney's name who took the files?

A.. Raymond McKay, Jr. He's now practicing here in Columbia, I went by his office this morning, by the way, and we went through the old file cabinets, which were burned and damaged and so forth. Some of the files were not damaged, except for smoke and water. Other files were completely destroyed. Now, I could find nothing in those files this morning about Mr. Ahrens. I went through the entire file cabinet. I've been over there for the last hour and a half, in fact, going through those file cabinets.

Q. Do you recall receiving a notice of deficiency sometime around late June or early July concerning Edward Ahrens' tax liability for the year '61?

A. In what year, this year?

Q. No, I'm sorry, in the year 1966 regarding a notice of deficiency.

A. I don't recall it, but I'm sure I did.

MR. ALBERT: I'like to have this marked as an exhibit.

(MARKED USA EXHIBIT #1 FOR IDENTIFICATION)

Q. Does that refresh your memory, sir?

A. (Examining) It doesn't refresh my memory, but it's my stationery and my signa-

The only thing definite that is established by the deposition of Mr. McGowan is that his employment as an attorney by the defendant was probably continuing, but he had no distinct recollection of what or when he did anything for defendant and seldom, if ever, communicated with him. On page 6 of the deposition he very glibly testified that:

"The only instruments I had possession of of Mr. Ahrens' at any time that I can recall was notices of a deficiency in tax, notice of assessment, the audit reports from the Internal Revenue Service, the proposed—well, I'll say proposed assessments, probably a copy of a deed on a house * * * *."

Apparently the attorney for plaintiff was not satisfied with the testimony. On page 8 of the deposition he further asked the witness whether he recalled receiving a notice of deficiency sometime around late June or July concerning Edward Ahrens' tax liability for the year 1961, and he answered, "I don't recall it, but I'm sure I did."

He was also asked about a letter that he wrote Mr. McLean, Appellate Division, in which he referred to "your letter of the 22nd day of June, 1966." He said that the letter didn't refresh his memory, but obviously he wrote it because it was on his stationery and bore his signature. "This was three or four years after I represented—after I initially began representing Mr. Ahrens." He was asked to what letter he was referring to in his letter to McLean, and he answered:

"It is obviously a letter of the Appellate Division. It may have been regarding taking the case before the

ture, so obviously I wrote it to Mr. McLean in the Appellate Division. This was three or four years after I represented—after I initially began representing Mr. Ahrens. Yes, this is my letter to Mr. McLean.

Q. You were still representing Mr. Ahrens at this particular time?

A. In this particular regard, yes.

Q. What letter is your letter referring to to the best of your recollection?

A. It is obviously a letter of the Appellate Division. It may have been regarding taking the case before the Appellate Division. As I say, I don't recall whether we did or not. This obviously is a request of the Appellate Division to hold the case in abeyance until Mr. Ahrens returns from Viet Nam.

Q. Is it possible your letter is referring to receipt by you of a notice of deficiency?

A. That is quite possible.

Q. Do you recall if an assessment was made against Ed Ahrens for the tax year 1961?

A. Yes, sir, there was an assessment made.

Q. Do you recall when that assessment was made?

A. No, sir, but it would have been made, I would say, roughly in '63 or '64.

Q. Are you quite sure of that?

A. No, I'm not. The statute of limitations was never raised and I would have raised the statute of limitations had it been after the limitation period.

Q. When did you first tell Mr. Ahrens about this assessment?

A. I probably wrote him in Viet Nam. I had an address which I could write him at and I talked to his wife on several occasions. I believe she was either in Japan or Okinawa or the Philippines, and I talked to her several times on the telephone during the time he was in Viet Nam; as I recall, I believe I apprised her of this by telephone, and I think this letter was written as a result of those conversations. I would not take it upon myself to ask a continuance on behalf of a client without the client's knowledge of the request.

Q. What was the attorney's name that took the bulk of your files again?

A. Raymond McKay.

Q. Did he ever have any connection with Edward Ahrens after the time he took over his files, to the best of your recollection?

A. Not to my knowledge because Ray was working for me and any communications between Mr. Ahrens and my office would have been with me. It would not have been with Mr. McKay.

Q. So, Mr. McKay never turned over any records—

A. No, not that I know of. I'm pretty sure he didn't.

Q. Prior to 1970 when you turned over the bulk of your records to Mr. McKay you did say you turned over some records—

A. Correspondence mostly.

Appellate Division. As I say, I don't recall whether we did or not."

Q. Is it possible your letter is referring to receipt by you of a notice of deficiency?

A. This is quite possible.

On January 3, 1967, William M. Foster, Chief, Appellate Branch Office, answered the letter of McGowan, above referred to, in which he stated:

"Mr. E. L. McGowan
1500 Washington Street
Columbia, South Carolina

Re: Edward J. & Lillian M. Ahrens
Years — 1959/1962, Incl.

Dear Mr. McGowan:

Thank you for your letter of December 29, 1966.

Our records show that we mailed a statutory notice of deficiency to the taxpayers on June 22, 1966. The 90-day period within which the taxpayers could have filed a petition with the Tax Court expired on September 20, 1966.

After expiration of the 90-day period we forwarded the file to the Internal Revenue Service Center, Atlanta, Georgia, for assessment and further processing. We do not now have the file or any jurisdiction in the case, such jurisdiction being with the District Director, Columbia, South Carolina. We suggest that you contact the District Director in regard to the matter, and we have sent a copy of your letter to him. Please let us know if we can be of any further assistance to you."

---

Q. Do you recall if an assessment was made against Ed Ahrens for the tax year 1961?

A. Yes, sir, there was an assessment made.

Q. Do you recall when that assessment was made?

A. No, sir, but it would have been made, I would say, roughly in '63 or '64.

Q. Are you quite sure of that?

A. No, I'm not. * * *

The only thing that is definitely established by the testimony of McGowan and the so-called Exhibit 3 hereinbefore referred to is that someone mailed envopes containing certain documents, to which the Post Office or someone else assigned Nos. 601215 and 601216. In nowise does that exhibit or the testimony of McGowan or anyone else establish that a proper notice of deficiency was mailed to McGowan and anyone else, and it is sheer speculation for the plaintiff to contend that the notice was enclosed in the envelope.

The record does not show that the Clerk from the review section of the Audit Division checked the documents or letters taken to the Post Office for mailing. If he in fact delivered for mailing the letters of notice of a deficiency, it would be evidenced by Exhibit 3. No notice was listed in the exhibit and plaintiff did not call the Clerk as a witness. If a notice of delinquency was enclosed, it would have been listed on Exhibit 3. It would have been helpful if plaintiff had called the clerk to testify as to the contents of the envelopes.

In 9 Mertens, Law of Federal Income Taxation, § 49.116, page 222, it is stated:

"§ 49.116.—Procedure Where Statutory Notice Is Issued. Where the Au-

dit Division is unable to arrive at an agreement with the taxpayer and receives no response to the 30-day letter, the District Director then issues the statutory notice of deficiency (90-day letter).

"Upon the issuance of the 90-day letter the case is terminated so far as the Audit Division is concerned.

"Extreme care is used to make sure that the statutory deficiency notices are issued in proper form to the correct taxpayer and that they are mailed within the statutory period. Inasmuch as the Commissioner may be required to prove the mailing of the statutory notice, the exact date of mailing, together with the postal registry number, are carefully preserved in a book kept for that purpose."

■ The court recognizes that the applicable statute does not prescribe any particular form or content of a notice of deficiency, and therefore any form is sufficient if it serves to advise the taxpayer that there has been a deficiency determined or assessed and to advise him of the amount of the deficiency and the year with respect to which such deficiency has been determined or assessed, or at least to give the taxpayer enough information so as he is not deceived as to the taxable period. Generally speaking, according to § 49.132 of 9 Mertens, Law of Federal Taxation, it may be said that notice of deficiency contemplated by the Code is a formal communication to the taxpayer concerning the proposed deficiency in tax. It must be definite as to the year, the assessment and the amount of the tax and not deceive him as to the taxable period. Here the document enclosed showed the taxable period to be 1959, 1960, 1961, and 1962. The original complaint filed herein October 10, 1972, alleged the taxable year as 1967 but was later amended to show 1961.

■ The court has seen no case holding that a mere statement of income tax due has ever been considered to qualify as a statutory notice. Certainly the plaintiff is now and has been in a position whereby it could have supplied a duly authenticated copy of the notice or could have called the employees who handled the transaction and thus advise the court of exactly what had been done and by whom.

In IV Wigmore on Evidence, § 1281, p. 691, it is stated:

"§ 1281. Witness must be called, unless by exception to the hearsay rule for certified copies, etc. A paper offered as a copy but not supported by any person's testimony in court is a hearsay—i. e., extrajudicial—statement, obnoxious to the hearsay rule (§ 1362 infra). Hence, some person must be called to the stand to verify the paper as the copy that it purports to be. A paper offered anonymously as a copy, or offered without calling some witness to verify it, is inadmissible.

"This principle, never disputed, is, with occasional lapses, constantly enforced in excluding supposed copies; though in earlier times there was undoubtedly more laxity in this respect."

■■ If a statutory notice was in fact prepared and mailed, the burden was upon plaintiff to establish that fact and the same is true of the alleged original assessment. The plaintiff admits that it has been unable to find the original notice, but those documents are official and key documents. Authenticated copies must be furnished, or at least the documents must be identified by the witnesses, and until such identification is made, the alleged documents are not admissible in evidence.

On July 12, 1974, the defendant filed a request for production of documents. On July 18, 1974, the plaintiff responded. Among other filings plaintiff filed the certificate of assessment, which shows that the first notice to defendant was sent October 28, 1966, and that a

delinquent notice was mailed March 17, 1967, but at the same time plaintiff contends that the notice of deficiency was in the envelope that was mailed to Mr. McGowan and Mr. Ahrens on June 22, 1966, 8 months and 15 days prior to the date of the delinquent notice mentioned in the certificate of assessment.

At oral argument the plaintiff was represented by Hon. Francis P. Dicello, a learned and experienced attorney of the Tax Division of the Department of Justice. A transcript of the argument has been filed with the Clerk of the Court.

Mr. Dicello stated that when the defendant filed his response to the first motion for summary judgment, in which he pleaded the defense that the defendant had never received a statutory notice of deficiency, "the issue really began to boil down" to the validity of the defense urged by defendant. "This is a rather tough case—it does raise an important principle since the Government relies so strongly—and, so often, on the prima facie correctness of what the date of assessment has been and what the taxpayer has to do to rebut that assessment." He refers to the contention and cases cited in plaintiff's brief where it is stated:

> "The United States of America has submitted to this Court a copy of a certificate of assessments and payments pertaining to the tax liabilities of Edward J. Ahrens for the year 1961. The fact that assessments were made establishes a prima facie case of liability which if not impeached has been clearly held sufficient to justify a recovery. United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131 (1881); Kenner v. C. I. R., 318 F.2d 632 (C.A. 7, 1963); United States v. Prince, 348 F.2d 746 (C.A. 2, 1965)."

In discussing said cases, he argued "that once the assessment is made, that certificate right here—is prima facie evi-

dence which will sustain a judgment unless the taxpayer rebuts it sufficiently —the assumption of correctness. Here pretty much is our problem. Neither one of us has been able to turn up that notice of deficiency." * * * "I think I know exactly what happened. And, I throw this out—not for evidentiary purposes—because we searched everywhere, because if we do have a trial and the court should grant the motion—I just will not be able to produce that document. But, there was on the deficiency notice that we allegedly sent out—it did not cover one year—but, several years, '59, '60, '71 and '62." * * * "The deficiency notice as a matter of practice is attached to the last year—the actual return for the last year. After six years any return that doesn't show a liability for which there isn't a deficiency outstanding is destroyed." He further stated that since the only liability claimed was for the year 1961, "the Government destroyed the return—and, in so doing it's my guess—and, it's only a guess—that they destroyed the deficiency notice. I have no proof of that, but, my guess is that's what happened."

He then argues that Mr. McGowan, as the attorney for the defendant, received the deficiency notice, but admits that "we didn't get into the question of whether the facts jived with a later assessment notice that he may have gotten or anything else." He then refers to the certificate of assessment that was executed June 7, 1972, which states that the "First Notice" was dated "10–28–66" and "Delinquent Notice, Section 6213(C), Orig. # 446001760" was dated "3–17–67". The court cannot determine whether plaintiff relies upon the date of the delinquent notice of March 17, 1967, but nevertheless the plaintiff continues to contend that the notice of deficiency was in the envelopes that were allegedly mailed to Mr. McGowan and Mr. Ahrens on June 22, 1966, eight months and fifteen days prior to the alleged notice of March 17, 1967.

The confusion in the record is not cleared or explained by the oral argument, but is further confounded.

During the argument Mr. Dicello also offered in evidence Exhibits 1, 2 and 3, as a basis for a request subsequently made by him. Exhibit 1 is an alleged offer of compromise which bears the notation "Rec'd 1–19–70." Exhibit 2, is a notice of federal tax lien filed in the Office of the Clerk of the Court, Florence County Court House, on June 14, 1972. Exhibit 3, dated October 29, 1972, is not the same exhibit 3 to the deposition of defendant. It is simply a statement of the defendant in which he complains of certain actions that had been taken by plaintiff during its entire investigation. The defendant objected to the introduction of said documents, but the court permitted the exhibits to be filed to be given consideration by the court if determined to be material. The court does not believe that said exhibits are material or that they add anything to the solution of this case, and the objection is sustained.

The main contention argued by Mr. Dicello is that regardless of whether a proper statutorily required notice was mailed, "can it be inferred by implied facts? Then, we think we ought to have a trial to see what implied facts there are."

The Court: That is the way I understood it. In other words, then, you raise the question of facts to be determined by a jury?

Mr. Dicello: That is right.

He further stated that if the court denied the motion to alter the judgment of January 28, 1975, it should grant a trial and then the plaintiff would, by cross examination of defendant at such trial, attempt to show, if possible, that no harm was done by the failure to issue proper notice of deficiency.

The deposition of defendant was taken October 11, 1974, and filed November 21, 1974, with its exhibits heretofore discussed. The deposition was not specifically referred to by the parties but was and is a part of the record.

█ The plaintiff is not entitled to a third attempt and to thus prolong further the final disposition of this case in a "vague hope that something may turn up at trial."

In E. P. Hinkel & Company, Inc., v. Manhattan Co., 506 F.2d 201, the court said at page 205:

"One of the purposes of summary judgment is to determine whether the parties can provide evidentiary support for their version of the facts. Perma Research and Development Co. v. Singer, 410 F.2d 572, 578 (2d Cir. 1969). If a party has credible evidence for its position, it must make the existence of such evidence known. '[S]ummary judgment cannot be defeated by the vague hope that something may turn up at trial.' Id., citing Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2d Cir. 1943). The mere fact that in retrospect an agreement does not seem favorable does not give the aggrieved party, a jury, or this court the right to reinterpret clear and unambiguous contractual language."

In Jacobson v. Maryland Casualty Co., (8 Cir. 1964) 336 F.2d 72, the court at page 74 held:

"Maryland had the burden of clearly establishing the lack of genuine issue of material fact. See Walling v. Fairmont Creamery Co., 139 F.2d 318 (8th Cir. 1943) and the cases collected in Allied Mutual Ins. Co. v. Lysne, 324 F.2d 290, 293 (8th Cir. 1963). Maryland's burden cannot be discharged unless the record upon which it moved reflected beyond question the lack of a genuine issue of material fact. The record falls short in this regard. The record is silent as to any contravention of Jacobson's averment of the affirmative defense with respect to liability under contract D. Under this

bond, Jacobson alleged that Maryland's breach of agreement caused the loss. If Maryland was responsible for the loss, there could be no liability upon the principal, Hughes, and hence a factual issue was joined which in the record before us remains unresolved."

See, also, Engl v. Aetna Life Ins. Co., (2 Cir. 1943) 139 F.2d 469.

In 6 Moore's Federal Practice, 2d Ed., beginning at § 56.15[3], and extending to § 57.17[1], the author completely summarizes the burden resting upon a movant for summary judgment. In the first paragraph of the summary the learned author states:

> "The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of genuine issue of material fact."

The court has thoroughly considered all the contentions of the plaintiff presented by its pleadings, the briefs and oral argument. In addition, the court has read and considered the authorities cited by plaintiff in support of its contentions and is convinced that the plaintiff has failed to establish by legal and admissible evidence that a proper and statutorily required notice of deficiency was mailed to the defendant or his attorney, and such failure on the part of plaintiff has prevented the defendant from proceeding in the Tax Court for a redetermination of the amount of taxes, if any, that are owed by defendant.

As stated in the original opinion, this case is hoary with age and the controversy should be settled. All parties have had a fair chance and equal opportunity to present their contentions and the court is today entering a judgment denying and overruling the motion filed February 6, 1975, to alter or amend the judgment of this court entered herein on January 28, 1975, and further confirming and approving said judgment.